UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
JUUL LABS, INC.,

                    Plaintiff,                            REPORT AND
                                               RECOMMENDATION

    -against-

                                                 21 CV 5779 (ENV) (RML)

GREENPOINT VAPE & TOBACCO
SHOP INC.,

                    Defendant.
-----------------------------------------------------X

LEVY, United States Magistrate Judge:

        By order dated January 4, 2022, the Honorable Eric N. Vitaliano, United States

District Judge, referred plaintiff's motion for default judgment to me for report and

recommendation.  For the reasons stated below, I respectfully recommend that plaintiff's motion

be granted.

BACKGROUND AND FACTS

        Plaintiff JUUL Labs, Inc. ("JLI" or "plaintiff") filed this action against defendant.

Greenpoint Vape & Tobacco Shop, Inc. ("defendant") on October 15, 2021.  (Complaint, dated

Oct. 15, 2021 ("Compl."), Dkt. No. 1.)  The complaint alleges trademark infringement pursuant

to Section 32(1) of the Lanham Act, 15 U.S.C. § 111(1); false designation of origin and unfair

competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and analogous claims

under New York law.  (See id.)

        Plaintiff is the designer, manufacturer, and distributor of JUUL-branded

electronic nicotine delivery systems ("ENDS") and other related products (collectively, the

"JUUL Products").  (Id. ¶ 2.)  The JUUL products include the JUUL system, which is comprised

of: "(i) a device containing a rechargeable battery, control circuitry and a receptacle for a

cartridge or pod, (ii) a disposable cartridge or pod ("JUULpod") that can be inserted into the device, has a heating chamber, and is prefilled with a proprietary nicotine e-liquid formulation, and (iii) a charger for charging the device, and related accessories."  (Id. ¶ 13.)

Plaintiff exclusively owns the following United States Trademark Registrations: "JUUL," Registration Number 4,818,664; "JUUL" (in a particular typeface), Registration No. 4,898,257; and "JUULpods," Registration Number 5,918,490 (collectively, the "JUUL Marks"). (Id. ¶¶ 11-12, Ex. A.)  The JUUL Marks appear clearly on JUUL Products and all marketing materials.  (Id. ¶ 14.)

Plaintiff asserts that "[d]ue in large part to the substantial commercial success of the JUUL Products, the JUUL brand is well-known to consumers and has garnered extensive coverage by the media."  (Id. ¶ 17.)  Plaintiff markets and sells JUUL Products internationally and domestically to current adult smokers, including through its website, and through its nationwide authorized networks.  (Id. ¶ 18.)  Furthermore, plaintiff has spent substantial time, money, and effort developing consumer recognition and awareness of its brand through extensive use of the JUUL Marks.  (Id.)  As a result, plaintiff "has built up and developed significant customer good will in its entire product line and the JUUL Products are immediately identified by the JULL Marks."  (Id.)

Defendant, a New York corporation, owns and operates a retail store located at 93 Nassau Avenue in Brooklyn, New York.  (Id. ¶ 7.)  Plaintiff alleges that defendant sold and facilitated the sale of "goods that were neither made by JLI nor by a manufacturer authorized by JLI" by using "reproductions, counterfeits, copies and or colorable imitations of JUUL Products and the JUUL Marks ("Counterfeit Goods")."  (Id. ¶ 19.)  Plaintiff further alleges that on

September 13, 2019, plaintiff's representative went to defendant's retail store and purchased a counterfeit product. (Id. ¶ 22, Ex. B.)

On March 2, 2020, plaintiff's counsel mailed a cease-and-desist letter to defendant. (Id. ¶ 23, Ex. C.) The correspondence notified defendant of, inter alia: (i) plaintiff's ownership of the JUUL Marks; (ii) plaintiff's confirmation that the goods sold by defendant were counterfeit goods; and (iii) plaintiff's demand that defendant cease the sale, manufacture, marketing, and importation of Counterfeit Goods and all other unauthorized use of plaintiff's intellectual property. (Id. ¶ 23.) Plaintiff asserts that defendant failed to respond or otherwise cooperate with plaintiff's cease-and-desist letter. (Id. ¶ 24.)

On July 15, 2020, a representative of plaintiff purchased "Unlawful Grey Market Goods" from defendant's retail store. (Id. ¶ 26.) The Unlawful Grey Market Goods were non-genuine JUUL Products that stated on the packaging that they are only authorized for sale outside of the United States. (Id. ¶ 25.)

Plaintiff maintains that defendant "is not authorized and never has been authorized by JLI to produce, manufacture, distribute, market, offer for sale and/or sell merchandise bearing the JUUL Marks[.]" (Id. ¶ 27.) Yet, defendant uses words, symbols, images, designs, and names that are confusingly similar or identical to the JUUL Marks to advertise and sell goods that are either counterfeit or grey market products. (Id. ¶ 28.) Plaintiff contends that defendant's conduct is "likely to deceive, confuse, and mislead purchasers and prospective purchasers into believing that the products are authorized by JLI" and that defendant's customers are "likely to mistakenly attribute" any defects or problems with these products to JLI. (Id. ¶ 29.) Further, plaintiff asserts that defendant's unauthorized sales are

causing irreparable harm to the JUUL Marks' goodwill and reputation as well as economic losses.  (Id. ¶¶ 30, 32.)

Plaintiff commenced this action in a timely manner.  (See Compl.)  Defendant was properly served (see Affidavit of Service of Timothy Botti, sworn to Oct. 26, 2021, Dkt. No. 8) but has failed to answer or move with respect to the complaint.  The Clerk of the Court entered defendant's default on December 10, 2021.  (Clerk's Entry of Default, dated Dec. 10, 2021, Dkt. No. 10.)

On December 29, 2021, plaintiff moved for default judgment and seeks the following relief: (1) statutory damages pursuant to the Lanham Act, 15. U.S.C. § 1117; (2) post-judgment interest pursuant to 28 U.S.C. § 1961(a); and (4) injunctive relief pursuant to the Lanham Act, 15 U.S.C. § 1116.  (Memorandum of Law in Support of Plaintiff's Motion for Default Judgment, dated Dec. 29, 2021 ("Pl.'s Mem."), Dkt. No. 12, at 1, 15-22.)  Judge Vitaliano referred plaintiff's motion to me.  (Order Referring Motion, dated Jan. 4, 2022.)  To date, the court has received no communication from defendant.

## DISCUSSION

### I.    Default Judgment

The Federal Rules of Civil Procedure prescribe a two-step process for a plaintiff to obtain a default judgment.  First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default," as it has done here.  FED. R. CIV. P. 55(a).  Second, after a default has been entered against the defendant, and the defendant fails to appear or move to set aside the default under Rule 55(c), the court may, on a plaintiff's motion, enter a default judgment.  FED. R. CIV. P. 55(b)(2).  In order to grant a default judgment, the court must

ensure that the plaintiff took all of the required steps in moving for default judgment, including providing proper notice to defendants of the lawsuit.  Here, as previously noted, plaintiff has demonstrated that it properly served defendant with the summons and complaint.  Plaintiff has also demonstrated that it served the Motion for Default Judgment and accompanying submissions on defendants in compliance with Local Rule 55.2(c).  (See Declaration of Terry Parker, Esq., dated Dec. 29, 2021, Dkt. No. 14, ¶ 4.)

**II.  Liability**

A defendant's "default is deemed to constitute a concession of all well-pleaded allegations of liability."  Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992).  Where a plaintiff moves for default judgment, the court "is required to accept all of [the plaintiff's] factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor."  Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)).  A court should grant a default judgment only if "[the plaintiff's] factual allegations establish [the defendant's] liability as a matter of law."  Id. (citing Au Bon Pain Corp., 653 F.2d at 65).

Plaintiff seeks default judgment on seven claims: (i) Trademark Infringement – Counterfeit Goods (15 U.S.C §1114); (ii) False Designation of Origin – Counterfeit Goods (15 U.S.C. §1125(a)); (iii) Unfair Competition – Counterfeit Goods (15 U.S.C. §1125(a)); (iv) Trademark Infringement – Grey Market Goods (15 U.S.C. § 1114); (v) Trademark Infringement Under Common Law; (vi) Common Law Unfair Competition; and (vii) Deceptive Acts and Practices Under Section 349 of New York General Business Law.  (See Pl.'s Mem. at 8-14; see also Compl.)  I will first address defendant's liability for trademark infringement and false designation under the Lanham Act.

5

A. Claims I, II, and IV: Federal Trademark Infringement with Respect to Counterfeit Goods, False Designation of Origin With Respect to Counterfeit Goods, and Federal Trademark Infringement With Respect to Grey Market Goods

To prevail on a trademark infringement or false designation claim under the Lanham Act, a plaintiff "must demonstrate that (1) it has a valid mark that is entitled to protection and that (2) the defendant's actions are likely to cause confusion with that mark." Tiffany & Co. v. Costco Wholesale Corp., 971 F.3d 74, 84 (2d Cir. 2020) (quotation marks and citation omitted); see also Energizer Brands, LLC v. My Battery Supplier, LLC, 529 F. Supp. 3d 57, 61 (E.D.N.Y. 2021) ("The standards for false designation of origin claims under Section 43(a) of the Lanham Act . . . are the same as for trademark infringement claims under Section 32[.]" (quotation marks and citation omitted)).

"The first prong is satisfied by the valid registration of a trademark." JUUL Labs Inc. v. Gates Mini Mkt. Corp., No. 21 CV 3240, 2022 WL 987430, at *3 (E.D.N.Y. Feb. 9, 2022) (citing Tiffany & Co., 971 F.3d at 84), report and recommendation adopted, 2022 WL 1406640 (E.D.N.Y. May 4, 2022); see also 15 U.S.C. § 1115 (A federally registered trademark "shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration."). Plaintiff has established that it is the sole owner of the JUUL Marks at issue and, therefore, has satisfied the first prong.  (See Compl. ¶ 11; Declaration of Randall J. Clement, Esq., dated Dec. 28, 2021 ("Clement Decl."), Dkt. No. 13, ¶ 2, Ex. A.)

For the second prong, "the analytical framework varies depending on whether the infringing goods are counterfeit goods or . . . gray market goods." Energizer Brands, LLC, 529 F.Supp.3d at 62 (quoting Abbott Labs. v. Adelphia Supply USA, No. 15 CV 5826, 2019 WL 5696148, at *4 (E.D.N.Y. Sept. 30, 2019)).  As discussed below, plaintiff has sufficiently

demonstrated that defendant's actions are likely to cause confusion for both the counterfeit and the grey market goods.

    1.  Counterfeit Goods

"In cases involving counterfeit goods, courts in the Second Circuit look to the eight non-exclusive factors established in Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492 (2d Cir. 1961) to determine whether the goods are likely to cause confusion[.]" Gates Mini Mkt. Corp., 2022 WL 987430, at *4. The factors are:

> (1) the strength of the trademark; (2) the degree of similarity between the plaintiff's mark and the defendant's allegedly imitative use; (3) the proximity of the products and their competitiveness with each other; (4) the likelihood that the plaintiff will "bridge the gap" by developing a product for sale in the defendant's market; (5) evidence of actual consumer confusion; (6) evidence that the defendant adopted the imitative term in bad faith; (7) the respective quality of the products; and (8) the sophistication of the relevant population of consumers.

Tiffany & Co., 971 F.3d at 84-85 (citing Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492, 495 (2d Cir. 1961); Starbucks Corp. v. Wolfe's Borough Coffee, Inc., 588 F.3d 97, 115 (2d Cir. 2009)). The first three factors are "perhaps the most significant." Mobil Oil Corp. v. Pegasus Petroleum Corp., 818 F.2d 254, 258 (2d Cir. 1987). However, "courts generally should not treat any single factor as dispositive; nor should a court treat the inquiry as a mechanical process by which the party with the greatest number of factors wins. Instead, the court should focus on the ultimate question of whether consumers are likely to be confused." Playtex Prods., Inc. v. Ga.-Pac. Corp., 390 F.3d 158, 162 (2d Cir. 2004) (citation and quotations omitted).

    Here, an analysis of the Polaroid factors weighs in plaintiff's favor. As to the first factor, a mark is "presumed to be strong by virtue of being registered." Century 21 Real Estate LLC v. Bercosa Corp., 666 F.Supp.2d 274, 282 (E.D.N.Y. 2009) (citing Rolex Watch U.S.A., Inc. v. Jones, No. 99 CV 2359, 2000 WL 1528263, at *2 (S.D.N.Y. Oct. 13, 2000)). As

discussed above, plaintiff's three marks are registered.  (See Compl. ¶ 11; Clement Decl. ¶ 2, Ex. A.)  Furthermore, plaintiff has invested substantial time and resources into developing goodwill in its marks and a reputation for high-quality goods.  (See Compl. ¶¶ 15-18.)  With respect to the second factor, plaintiff alleges that the marks on defendant's counterfeit goods are identical to the JUUL Marks.  (See id. ¶ 28, Exs. B & D.)  In considering the third factor, the counterfeit goods were being sold "through the same retail channels as genuine JUUL Products and [d]efendant sells to the same prospective consumers as JLI."  (Pl.'s Mem. at 13; see also Compl. ¶¶ 19-22; 35.)  Therefore, the products share the same marketplace, which indicates that they are not only proximate to one another but also in direct competition.  Thus, the first three factors suggest that consumers are likely to be confused by defendant's goods.

        With respect to evidence of actual consumer confusion, plaintiff has not shown confusion through consumer data.  However, "actual confusion need not be shown to prevail under the Lanham Act, since actual confusion is very difficult to prove, and the Act requires only a *likelihood* of confusion as to source." Beastie Boys v. Monster Energy Co., 66 F. Supp. 3d 424, 456 (S.D.N.Y. 2014) (quoting Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 799 F.2d 867, 875 (2d Cir. 1986)) (emphasis in original).  Given plaintiff's well-pleaded allegations that defendant uses marks that "are identical to, or substantially indistinguishable" from the JUUL Marks (see Compl. ¶¶ 28, 35), it is reasonable to infer consumers will likely be confused as to whether an item is a genuine JUUL product.

        Plaintiff has also adequately alleged that defendant acted in bad faith.  This factor examines whether defendant used plaintiff's mark "to exploit the good will and reputation of a senior user by adopting the mark with the intent to sow confusion between the two companies' products." Star Indus., Inc. v. Bacardi & Co., 412 F.3d 373, 387 (2d Cir. 2005).  Bad faith may

be inferred where a junior user had actual or constructive knowledge of the senior user's mark. Id.  Plaintiff alleges that defendant acted "willfully in infringing upon the JUUL Marks" with the "intent to cause confusion and mistake, and to deceive the consuming public as to the source, sponsorship, [and] affiliation" of the counterfeit products.  (Compl. ¶¶ 39, 49.)  Moreover, defendant did not cooperate with plaintiff after receiving a cease-and-desist letter suggesting that defendant knowingly continued the infringement.  (Id. ¶¶ 23-26, 44; Clement Decl. ¶¶ 3-4.)

The quality of defendant's product also weighs in plaintiff's favor.  "This factor is primarily concerned with whether the senior user's reputation could be jeopardized by the fact that the junior user's product is of inferior quality."  Arrow Fastener Co. v. Stanley Works, 59 F.3d 384, 398 (2d Cir. 1995).  Plaintiff alleges that the products offered by defendant are "not manufactured in accordance with JLI's own stringent quality controls" and use "unknown substances and materials, in unknown locations and with unknown manufacturing requirements and controls."  (Compl. ¶ 20.)  Plaintiff argues that consumers "who perceive a defect, lack of quality, or any other irregularity are likely to mistakenly attribute the issue to JLI, to the detriment of JLI's business and the JUUL brand."  (Id. ¶ 29.)  To the extent plaintiff has no control over the quality of the goods defendant sells, any complaints or problems with the quality could be attributed to plaintiff and harm its reputation and brand.

Finally, with respect to the eighth factor, JUUL products are sold to the general adult public.  (See Compl. ¶ 18.)  There is no evidence to suggest that the average adult smoker would have specialized knowledge sufficient to enable them to identify a counterfeit product.  Consequently, this factor too weighs in favor of plaintiff.

Together, the Polaroid factors overwhelmingly weigh in plaintiff's favor.  I therefore find that the counterfeit goods are likely to cause confusion among consumers and I

respectfully recommend that default judgment be granted on plaintiff's trademark infringement and false designation claims for counterfeit goods under the Lanham Act.

2. Grey Market Goods

Gray market goods are "goods that are manufactured [under authorization from the trademark owner], are legally purchased [outside the United States] from authorized distributors, and are then imported by persons other than the trademark holder and without the markholder's permission." Gates Mini Mkt. Corp., 2022 WL 987430, at *5 (quoting Zino Davidoff SA v. CVS Corp., 571 F.3d 238, 241 (2d Cir. 2009)). "Gray market goods typically use identical trademarks and are sold in original packaging because they were obtained legitimately from a manufacturer in another country." Id. (citing Abbott Labs., 2019 WL 5696148, at *4).

While a trademark holder usually does not have a right under the Lanham Act to control unauthorized resales if the sold goods are genuine, there are two types of goods that are not considered genuine and give rise to Lanham Act Liability. Abbott Labs., 2019 WL 5696148, at *4. The first is "goods that are not intended for domestic sale and are materially different from domestic goods." Id. (citing Original Appalachian Artworks, Inc. v. Granada Elecs., Inc., 816 F.2d 68, 73 (2d Cir. 1987)). The second is "goods sold in contravention of legitimate, established, substantial, and nonpretextual quality-control measures that the trademark holder follows, the sale of which will diminish the value of the mark." Id. (citing Warner-Lambert Co. v. Northside Dev. Corp., 86 F.3d 3, 6 (2d Cir. 1996)).

Plaintiff alleges that the grey market goods are not intended for sale in the United States. (Compl. ¶ 60.) The goods are "designed to comply with the regulations of the authorized foreign marketplaces" and "are not in compliance with the regulations of the U.S. Food and Drug

Administration."  (Id.)  Further, plaintiff contends that defendant's sale of the grey market goods

has "caus[ed] irreparable harm to the goodwill symbolized by the JUUL Marks and [their]

reputation for quality."  (Id. ¶ 29.)  Accordingly, I find that the grey market goods constitute non-

genuine goods, and I respectfully recommend that default judgment be granted on plaintiff's

trademark infringement claim for grey market goods under the Lanham Act.

    B.  <u>Claim V: New York Common Law Trademark Infringement</u>

    Plaintiff also brings a trademark infringement claim against defendant under New

York common law.  (<u>See</u> Compl. ¶¶ 66-69.)  "The legal standard for trademark infringement

under New York common law is 'essentially the same' as under the Lanham Act."  <u>Gates Mini</u>

<u>Mkt. Corp.</u>, 2022 WL 987430, at *3 (quoting <u>Deckers Outdoor Corp. v. Huang</u>, No. 15 CV 4772,

2017 WL 1842556, at *2 (E.D.N.Y. Apr. 20, 2017), <u>report and recommendation adopted</u>, 2017

WL 1854728 (E.D.N.Y. May 5, 2017)).  "By establishing the federal trademark-infringement

claims, [p]laintiff also necessarily establishes [d]efendant's liability on the parallel infringement

claim under New York common law."  <u>JUUL Labs, Inc. v. EZ Deli Grocery Corp I</u>, No. 21 CV

2615, 2022 WL 1085406, at *6 (E.D.N.Y. Feb. 10, 2022), <u>report and recommendation adopted</u>,

2022 WL 819152 (E.D.N.Y. Mar. 18, 2022); <u>see also</u> <u>Mitchell Grp. USA LLC v. Udeh</u>, No. 14

CV 5745, 2017 WL 9487193, at *4 (E.D.N.Y. Mar. 8, 2017), <u>report and recommendation</u>

<u>adopted</u>, 2017 WL 3208532 (E.D.N.Y. July 28, 2017).  I therefore respectfully recommend that

default judgment be granted on plaintiff's trademark infringement claim under New York

common law.

    C.  <u>Remaining Claims</u>

    Plaintiff alleges additional claims against defendant for unfair competition under

the Lanham Act and New York common law as well as for deceptive acts and practices under §

349 of New York's General Business Law.  (See Compl. ¶¶ 50-57, 70-73, 75-79.)  I find it unnecessary to address these remaining claims because the court has already found plaintiff entitled to default judgment on some of its claims and the scope of relief would not change based on the merits of the remaining claims.  See, e.g., Gates Mini Mkt. Corp., 2022 WL 987430, at *5; Microsoft Corp. v. Does 1-2, No. 20 CV 1217, 2021 WL 4755518, at *8 (E.D.N.Y. May 28, 2021), report and recommendation adopted, 2021 WL 4260665 (E.D.N.Y. Sept. 20, 2021).

### III. Damages and Other Relief

Once liability is established, a court must then conduct an inquiry to establish damages to a "reasonable certainty."  Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997).  In conducting an inquiry, the court need not hold a hearing "as long as it [has] ensured that there [is] a basis for the damages specified in the default judgment."  Id.  The court may rely on affidavits or documentary evidence when evaluating the fairness of the damages requested.  See Tamarin v. Adam Caterers, Inc., 13 F.3d 51, 54 (2d Cir. 1993); Chun Jie Yin v. Kim, No. 07 CV 1236, 2008 WL 906736, at *2 (E.D.N.Y. Apr. 1, 2008) (collecting cases).

Having concluded that the well-pleaded allegations support a finding that defendant is liable under the Lanham Act and New York common law, I next turn to the requested relief.  Plaintiff seeks statutory damages, post-judgment interest, and injunctive relief.[1] (Pl.'s Mem. at 5-6.)

---

[1] Plaintiff notes that it "does not seek adjudication of other forms of available monetary remedies . . . such as actual damages, treble damages, punitive damages, attorneys' fees, [and] costs . . . [i]n light of JLI's request for substantial and warranted statutory damages[.]"  (Pl.'s Mem. at 15 n.3; see also Clement Decl. ¶ 7.)

A.  Statutory Damages

The Lanham Act permits the recovery of actual or statutory damages.  See 15 U.S.C. § 1117(c).  Statutory damages are to be "not less than $1,000 or not more than $200,000 per counterfeit mark per type of goods or services . . . as the court considers just."  15 U.S.C. § 1117(c)(1).  For willful violations, the statute authorizes damages of up to "$2,000,000 per counterfeit mark per type of good or services . . . as the court considers just."  15 U.S.C. § 1117(c)(2).

"In the default judgment context, a court has discretion to award a statutory damages amount that it feels just under the circumstances."  Turn On Prods., Inc. v. Almost Famous Apparel, LLC, No. 18 CV 625, 2019 WL 2436297, at *5 (E.D.N.Y. Apr. 12, 2019) (citing Philip Morris USA Inc. v. 5 Bros. Grocery Corp., No. 13 CV 2451, 2014 WL 3887515, at *6 (E.D.N.Y. Aug. 5, 2014)).  "Where there is little evidence to support the amount of damages that plaintiff requests, courts often award far-below the statutory maximum and far-below the plaintiff's demand."  Id.; see also Burberry Ltd. v. Euro Moda, Inc., No. 08 CV 5781, 2009 WL 4432678, at *5 (S.D.N.Y. Dec. 4, 2009) ("Most judges have issued awards far below the statutory maximum, particularly where the plaintiff does not have concrete information about the defendant's actual sales figures and profits and the estimate of plaintiff's lost revenue and defendant's profits is not in the millions of dollars.").

To determine a just award, courts in this Circuit consider the following factors: "(1) the infringer's profits reaped and expenses saved; (2) the plaintiff's revenues lost; (3) the mark's value; (4) the need to deter potential infringers; (5) the degree of willfulness or innocence of the defendant; (6) the defendant's cooperativeness in providing information relevant to proof

of profits and losses; and (7) the need to deter the defendant from future misconduct." Mattel, Inc. v. Arming, No. 18 CV 8824, 2021 WL 3683871, at *8 (S.D.N.Y. Aug. 18, 2021) (citing Spin Master Ltd. v. Allan Yuan's Store, 325 F. Supp. 3d 413, 425-26 & n.4 (S.D.N.Y. 2018)); see also 7-Eleven, Inc. v. Z-Eleven Convenience Store Inc., No. 16 CV 4116, 2018 WL 1521859, at *6 (E.D.N.Y. Jan. 17, 2018), report and recommendation adopted, 2018 WL 1466799 (E.D.N.Y. Mar. 26, 2018).

In the instant matter, plaintiff requests statutory damages "in the amount of $750,000, which can be equated to $250,000 for each of the three JUUL Marks identified in the Complaint." (Pl.'s Mem. at 19.) In determining whether this is a just award, factors one and two are neutral, if not slightly in defendant's favor, because plaintiff has not provided evidence of the profits earned by defendant or the losses plaintiff suffered as a result. While a determination of statutory damages need not be tied to actual harm, plaintiff has made no effort to explain the reasoning behind the requested amount of $250,000 per mark.

The third factor—the value of the mark—weighs in favor of plaintiff. Plaintiff states that "JLI has spent substantial time, money, and effort in developing consumer recognition and awareness of its brand." (Compl. ¶ 18.) Further, plaintiff claims that "JLI has built up and developed significant customer goodwill in its entire product line and the JUUL Products are immediately identified by the JUUL Marks." (Id.) Thus, plaintiff has sufficiently established that the marks are valuable.

The fourth factor—the scale of defendant's infringement—weighs slightly in defendant's favor. Other than noting evidence that plaintiff bought one counterfeit item and one grey market item from defendant's retail store (see Compl. ¶¶ 22, 26, Ex. B & D), plaintiff has not introduced any other evidence regarding the profitability of defendant's business or the scale

14

of defendant's operation.

The fifth factor, which considers the willfulness of the defendant's conduct, weighs in favor of plaintiff. Defendant's default substantiates plaintiff's allegations that defendant's conduct was willful. See, e.g., EZ Deli Grocery Corp I, 2022 WL 1085406, at *8 ("Defendant's trademark infringement is deemed willful by virtue of Defendant's default[.]"); Gates Mini Mkt. Corp., 2022 WL 987430, at *6 (same); see also Chloe v. Zarafshan, No. 06 CV 3140, 2009 WL 2956827, at *7 (S.D.N.Y. Sept. 15, 2009) ("Willfulness may be established by a party's default because an innocent party would presumably have made an effort to defend itself." (citations omitted)).

Similarly, the sixth factor weighs in plaintiff's favor. Defendant did not respond to plaintiff's cease-and-desist letter (see Compl. ¶ 24; Clement Decl. ¶ 4) and defendant has not cooperated in the present action (see Clerk's Entry of Default, dated Dec. 10, 2021, Dkt. No. 10).

The final factor—the need to deter the defendant from future misconduct—also weighs in favor of plaintiff. Given defendant's default and its failure to cooperate with the cease-and-desist letter, this court remains concerned that defendant might continue to infringe upon plaintiff's marks.

Having considered the factors, I find that JLI is entitled to a substantial award, particularly considering the deterrent effect on other potential infringers and defendant's lack of cooperation in this matter. However, given the limited information provided about the size or scope of defendant's counterfeiting and sales, I find the requested award of $750,000 excessive. Instead, as two other courts in this district have recently concluded in similar cases involving plaintiff, I respectfully recommend plaintiff be awarded a total of $50,000 in enhanced statutory damages, which accounts for $25,000 per sale of defendant's counterfeit or non-genuine JUUL

Products.  See EZ Deli Grocery Corp I, 2022 WL 1085406, at *9 (awarding JLI statutory

damages of $50,000 and noting that the court must focus "on the fact that this case is based on

only two sales"); Gates Mini Mkt. Corp., 2022 WL 987430, at *8 (awarding JLI a total of

$50,000 in enhanced statutory damages, $25,000 for each infringing product sold, and noting

that this amount "is more than enough to remedy any damage JLI may have suffered and

discourage any future infringement").  See also Stark Carpet Corp. v. Stark Carpet & Flooring

Installations, Corp., 954 F. Supp. 2d 145, 155 (E.D.N.Y. 2013) (collecting cases) ("Courts

regularly award statutory damages in the realm of up to $50,000 as amounts that both account for

a defendant's willful disregard of trademark laws and as a deterrent to others who might consider

engaging in infringing conduct in the future.").

### B.  Post-Judgment Interest

Plaintiff requests an award of post-judgment interest.  (See Pl.'s Mem. at 20.)

Under 28 U.S.C. § 1961(a), interest is allowed "on any money judgment in a civil case recovered

in a district court."  Accordingly, I respectfully recommend that the court award plaintiff post-

judgment interest at the rate specified in 28 U.S.C. 1961(a)-(b).  See, e.g., EZ Deli Grocery Corp.

I, 2022 WL 1085406, at *10 (awarding JLI post-judgment interest in a similar case); Gates Mini

Mkt. Corp., 2022 WL 987430, at *8 (same).

### C.  Injunctive Relief

Plaintiff also requests that this court issue a permanent injunction "to prevent any

future trademark infringement by [d]efendant."  (Pl.'s Mem. at 20.)  The Lanham Act gives

courts the "power to grant injunctions, according to the principles of equity and upon such terms

as the court may deem reasonable."  15 U.S.C. § 1116(a).  A plaintiff seeking a permanent

injunction must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies

available at law, such as monetary damages, are inadequate to compensate for that injury; (3)

that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity

is warranted; and (4) that the public interest would not be disserved by a permanent injunction."

Salinger v. Colting, 607 F.3d 68, 77 (2d Cir. 2010) (quoting eBay Inc. v. MercExchange, L.L.C.,

547 U.S. 388, 391 (2006)).

       With respect to the first element, plaintiff alleges that defendant's sales of

counterfeit and grey market goods damaged its goodwill and reputation.  (See Compl. ¶¶ 30, 32,

37, 46, 54.)  Additionally, as discussed above, plaintiff has demonstrated that there is a

likelihood of confusion between its products and the counterfeit and grey market goods sold by

defendant.  Therefore, plaintiff has established that it suffered irreparable harm.  See Streamlight,

Inc. v. Gindi, No. 18 CV 987, 2019 WL 6733022 (E.D.N.Y. Oct. 1, 2019) ("In trademark

infringement cases under the Lanham Act, a party may show irreparable injury by demonstrating

a likelihood of confusion.") (collecting cases), report and recommendation adopted, 2019 WL

6726152 (E.D.N.Y. Dec. 11, 2019); Power Test Petroleum Distribs., Inc. v. Calcu Gas, Inc., 754

F.2d 91, 95 (2d Cir. 1985) ("[I]rreparable injury[ ] exists in a trademark case when the party

seeking the injunction shows that it will lose control over the reputation of its trademark"

because loss of control over one's "[r]eputation is not calculable nor precisely compensable."

(citation omitted)).

       Second, plaintiff has demonstrated that the available remedies at law are

inadequate.  Defendant's willful infringement and failure to appear in this action suggest that

defendant might continue to engage in infringing activities and counterfeiting unless enjoined by

the court.  See Fed. Exp. Corp. v. JetEx Mgmt. Servs., Inc., No. 13 CV 04431, 2014 WL

4628910, at *4 (E.D.N.Y. May 8, 2014) (finding this element of the test satisfied when

defendants "ignored [plaintiff]'s demands to cease and desist from their illegal conduct and failed to defend against this lawsuit"), report and recommendation adopted, 2014 WL 4628983 (E.D.N.Y. Sept. 15, 2014).  Additionally, "'[b]ecause the losses of reputation and goodwill and resulting loss of customers are not precisely quantifiable, remedies at law cannot adequately compensate' plaintiffs such as JLI when their reputations are damaged by the proliferation of counterfeit goods."  Gates Mini Mkt. Corp., 2022 WL 987430, at *9 (quoting Microsoft Corp., 2021 WL 4755518, at *10 ).

Third, plaintiff's hardship is apparent, and it is "axiomatic that an infringer. . . cannot complain about the loss of ability to offer its infringing product."  WPIX, Inc. v. ivi, Inc., 691 F.3d 275, 287 (2d Cir. 2012) (citation omitted).  Thus, the balance of hardships weighs in plaintiff's favor.

Finally, the public interest would be served by issuing the injunction.  See AW Indus., Inc. v. Sleepingwell Mattress Inc., No. 10 CV 04439, 2011 WL 4404029, at *11 (E.D.N.Y. Aug. 31, 2011), report and recommendation adopted, 2011 WL 4406329 (E.D.N.Y. Sept. 21, 2011) ("The trademark laws are intended, in part, to protect the public from confusion [,]" and "[c]learly, it is in the public interest to avoid deceit and confusion in consumer transactions.").

I find that each of the four elements weighs in favor of plaintiff.  I therefore respectfully recommend that plaintiff's request for injunctive relief be granted and that the following order for a permanent injunction be issued:

> An injunction by this Court prohibiting Defendant, and its respective agents, servants, employees, and representatives and all persons in active concert and participation with them, from: engaging or continuing to engage in infringing, unlawful, unfair, or fraudulent business acts or practices relating to the intellectual property owned by JUUL Labs, Inc., including the marketing, sale,

distribution, and/or other dealing in any non-genuine JUUL-branded products such as fake counterfeit products or unauthorized grey-market products; using without permission any mark or other intellectual property right of JUUL Labs, Inc.; acting to infringe federally-registered, registration-pending, and common law trademarks owned by JUUL Labs, Inc.; falsely designating the origin of any product to be from JUUL Labs, Inc.; engaging in unfair competition with JUUL Labs, Inc.; or acting in any other manner to derogate intellectual property rights owned by JUUL Labs, Inc.

(See Pl.'s Mem. at 22; Compl. at 15.)

## CONCLUSION

For the foregoing reasons, I respectfully recommend that plaintiff's motion for default judgment be granted, and that plaintiff be awarded statutory damages of $50,000, plus post-judgment interest. I further recommend that defendant be permanently enjoined from infringing upon plaintiff's trademarks.

Plaintiff is directed to serve copies of this Report and Recommendation on defendant by regular mail, and to file proof of service with the court within ten days of this Report and Recommendation. Any objections to this Report and Recommendation must be filed electronically, with courtesy copies to Judge Vitaliano and to my chambers, within fourteen days. Failure to file objections within the specified time waives the right to appeal the district court's order. See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(d).

Respectfully submitted,


__/s/ Robert M. Levy _____
ROBERT M. LEVY
United States Magistrate Judge


Dated:  Brooklyn, New York
        August 19, 2022

19